**IN THE DISTRICT COURT OF THE UNITED STATES**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**
**5:07cv117**

| | | |
|---|---|---|
| **JIMMY H. HOLLIFIELD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **Vs.** | ) | **MEMORANDUM** |
| | ) | **OF DECISION** |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the court pursuant to 28, United States Code, Section 636(c) and upon plaintiff's Motion for Summary Judgment and the Commissioner's Motion for Summary Judgment. Having carefully considered such motions and reviewed the pleadings, the court enters the following findings and conclusions. A judgment reflecting such conclusions is being entered simultaneously herewith.

**FINDINGS AND CONCLUSIONS**

**I.     Administrative History**

Plaintiff filed an application for a period of disability and Disability Insurance Benefits. Plaintiff's claim was denied both initially and on reconsideration; thereafter,

plaintiff requested and was granted a hearing before an administrative law judge ("ALJ"). After conducting a hearing, the ALJ issued a decision which was unfavorable to plaintiff, from which plaintiff appealed to the Appeals Council. Plaintiff's request for review was denied and the ALJ's decision affirmed by the Appeals Council, making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). Thereafter, plaintiff timely filed this action.

## II.     Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the undersigned adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III.    Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not *de novo*, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra. Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's

decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence.  Hays v. Sullivan, supra.

## IV.  Standard for Evaluating Allegations of Pain and Other Subjective Complaints

Plaintiff's claim for benefits includes allegations of pain or other subjective complaints.  The correct standard and method for evaluating claims of pain and other subjective symptoms in the Fourth Circuit has developed from the Court of Appeals' decision in Hyatt v. Sullivan, 899 F.2d 329 (4th Cir. 1990)(Hyatt III), which held that " [b]ecause pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative."  Id., at 336.  A two-step process for evaluating subjective complaint was developed by the appellate court in Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996), and is now reflected in Social Security Ruling 96-7p.[1]

Craig requires that the Commissioner apply a two-step analysis when assessing the credibility of a claimant's subjective complaints of pain. See 20 C.F.R. § 416.929.

---

[1]

"The purpose of this Ruling is to clarify when the evaluation of symptoms, including pain, under 20 CFR 404.1529 and 416.929 requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects; to explain the factors to be considered in assessing the credibility of the individual's statements about symptoms; and to state the importance of explaining the reasons for the finding about the credibility of the individual's statements in the disability determination or decision."  S.S.R. 96-7p (statement of purpose).

In conducting the two-step <u>Craig</u> analysis, Step One requires the ALJ to determine whether there is "objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant" <u>Craig</u>, at 594. Once a medical impairment is identified by the ALJ in Step One that could reasonably be expected to produce the pain or other subjective complaint asserted, the intensity and persistence of that pain is evaluated by the ALJ along with the extent to which such pain or other subjective complaint limits claimant's ability to engage in work. <u>Id.</u>; <u>see also</u> 20 C.F.R. § 416.929(c).

 Once the ALJ progresses to Step Two, he or she considers the following factors, which include: (1) plaintiff's testimony and other statements concerning pain or other subjective complaints; (2) plaintiff's medical history; (3) any laboratory findings; (4) objective medical evidence of pain if any; (5) the plaintiff's activities of daily living; and (6) any course of treatment the plaintiff has undergone to alleviate pain. <u>Craig</u>, <u>supra</u>, at 595.

## V.    Substantial Evidence

### A.    Introduction

 The court has read the transcript of plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the extensive exhibits contained in the

administrative record. The issue is not whether a court might have reached a different conclusion had he been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. The undersigned finds that it is.

## B. Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b. An individual who does not have a "severe impairment" will not be found to be disabled;

c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work

experience, must be considered to determine if other work can be performed.

20 C.F.R. 404.1520(b)-(f). In this case, the Commissioner determined plaintiff's claim at the fifth step of the sequential evaluation process.

## C.   The Administrative Decision

Having determined that plaintiff was unable to do his past relevant work , which included operation of a saw mill but which provided no transferable skills, the ALJ determined at the fifth step of the sequential evaluation process that plaintiff had the residual functional capacity ("RFC") to perform light work, and that such capacity was not compromised by non-exertional impairments. A.R., at 24. Employing the Medical-Vocational Guidelines, the ALJ determined that plaintiff was not disabled within the meaning of the Social Security Act. Id.

## D.   Discussion

### 1.   Plaintiff's Assignments of Error

Plaintiff has made the following assignments of error:

(1)   The ALJ's exclusion of morbid obesity from his severe impairments finding is not supported by substantial evidence.

(2)   The ALJ committed reversible error by failing to adequately consider the impact of morbid obesity on the plaintiff's "residual functional capacity," accordingly, his "residual functional capacity" finding is not supported by substantial evidence.

(3)     The Administrative Law Judge committed reversible error by not obtaining the testimony of a qualified vocational expert to insure that the agency met its burden of showing specific jobs that the plaintiff could do once the plaintiff established that he could not perform his past relevant work.

(4)     The ALJ committed error by failing to make a credibility finding or assign weight attributed to the testimony of a material witness.

Plaintiff's assignments of error will be discussed seriatim.

## 2.     First Assignment of Error: *The ALJ Erred at Step Two of the Sequential Evaluation Process by Exclusion of Plaintiff's Morbid Obesity*

Plaintiff first argues that the ALJ's exclusion of morbid obesity from his severe impairments finding is not supported by substantial evidence.  The court finds no merit in this assignment of error.

In accordance with S.S.R. 02-1p, where a treating source determines that a claimant is suffering from obesity, the regulations now require the ALJ to determine if and how obesity impacts other impairments.  Id.  The Commissioner has generally determined that

> Because there is no listing for obesity, we will find that an individual with obesity "meets" the requirements of a listing if he or she has another impairment that, by itself, meets the requirements of a listing. We will also find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing. For example, obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing. This is especially true of musculoskeletal,

respiratory, and cardiovascular impairments. It may also be true for other coexisting or related impairments, including mental disorders.

At Step Two of the sequential evaluation process, plaintiff, not the Commissioner, bears the burden of establishing that an impairment is severe. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). To meet his burden, plaintiff must establish that he has an impairment or a combination of impairments that significantly limit his physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c) (2007).There are a number of problems with plaintiff's assignment of error based on his alleged obesity.

First, plaintiff alleged that he was unable to work due to diabetes, congestive heart failure, high blood pressure, blocked arteries, and a hiatal hernia. He never alleged that he was unable to work due to obesity or due to obesity in combination with his other impairments.

Second, while the medical record does contain routine references to plaintiff's weight and height,[2] it does not contain findings that plaintiff was suffering from excessive weight or obesity.   In making his argument in this action, plaintiff further cites to no medical evidence contained in this record that indicates his alleged

---

[2]     It appears that during the relevant period, plaintiff was approximate 6'3" and weighed between 286 and 300 pounds.

obesity significantly limited his physical or mental ability to perform basic work activities.

Third, plaintiff was represented by the same counsel both at the hearing and before this court. Review of the transcript of the administrative hearing does not reveal that counsel, the claimant, or his lay witness raised the issue of obesity with the ALJ. See A.R., at 680-723. Indeed, at page 698 of the administrative record, counsel for plaintiff examined plaintiff as to his weight during the relevant period, but asked no questions concerning the impact of his weight on his ability to work or on the impact of his weight with plaintiff's other impairments. A.R., at 698. At page 709 of the administrative record, plaintiff testified as to his attempts at weight loss over the years. A.R., at 709. At page 719 of the administrative record, plaintiff's lay witness mentions that plaintiff is a "big man." A.R., at 719. The word "obesity" is not mentioned at anytime during the hearing, either in the testimony of the witnesses or in counsel for defendant's opening statement. At the second step of the sequential evaluation process, this court simply cannot read S.S.R. 00-1p to require the ALJ to pull from thin air a finding that plaintiff's alleged obesity was a severe impairment where counsel make no claim or argument and the records contains no evidence that plaintiff's obesity either singly or in combination with other impairments limited plaintiff's ability to perform basic work activities.

Even if the court were to assume that plaintiff had a diagnosis of obesity under the National Institute of Health's guidelines, Pl. Br., at 5-6, a mere diagnosis is not sufficient to satisfy the criteria for a severe impairment, because the claimant must demonstrate that the condition significantly restricts his ability to perform basic work activities. 20 C.F.R. § 404.1521(b). The ALJ's alleged failure to discuss plaintiff's obesity would be at most a harmless error since none of his physicians assessed any work related limitations that resulted from this condition. See Forte v. Barnhart, 377 F.3d 892, 896-897 (8th Cir. 2004). The court can find no merit to this assignment of error.

> **3.** **Second Assignment of Error: *The ALJ Erred at Step Four of the Sequential Evaluation Process by Failing to Consider the Impact of Plaintiff's Morbid Obesity in Determining RFC***

Plaintiff next argues that the ALJ committed reversible error by failing to adequately consider the impact of morbid obesity on the plaintiff's RFC and that his RFC finding is not, therefore, supported by substantial evidence. The court finds this assignment of error to be unavailing. In the Social Security Regulations, the Commissioner has discussed the potential effects of obesity on a claimant's residual functional capacity:

> Obesity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system, and disturbance of this system can be a major cause of disability to individuals with obesity.

The combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately. Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and <u>when assessing</u> a claim at other steps of the sequential evaluation process, including when assessing <u>an individual's residual functional capacity</u>, <u>adjudicators must consider any additional and cumulative effects of obesity</u>.

20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.00(Q).

The ALJ is solely responsible for determining the RFC of a claimant. 20 C.F.R. § 404.1546(c). In determining RFC, the ALJ must consider the functional limitations and restrictions resulting from the claimant's medically determinable impairments. S.S.R. 96-8p. Inasmuch as RFC is determined at the fourth step of the sequential evaluation process, the burden is on the claimant to establish that he or she suffers from a physical or mental impairment which limits functional capacity. <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981). In this case, the ALJ determined that plaintiff had the RFC for light work. A.R., at 23.

Review of the administrative decision of the ALJ as well as a thorough reading of the transcript of hearing reveals that the ALJ reached his RFC determination after considering the reports from plaintiff's February and March 1998 hospitalization at Valdese General Hospital, his February 22, 1998, nocturnal polysomonogram results,

his medical records from Dr. Bujold, dated October 8, 1998 and December 1, 1998, and the hearing testimony of both plaintiff and his former fiancee. A.R., at 20-22.

As with the previous assignment of error at step two, plaintiff contends that it was error for the ALJ not to consider plaintiff's obesity in making his RFC determination at the fourth step of the sequential evaluation process. Plaintiff contends that his obesity restricted his ability to stand and walk for prolonged periods, which, of course, would be limitations that could impact an RFC determination. Plaintiff, however, has failed to support such argument with citation to any evidence that shows that his weight interfered with his ability to stand and walk.

While the court agrees that an ALJ has a duty to consider any additional and cumulative effects of obesity in making an RFC determination, the ALJ cannot make such a determination out of whole cloth where the record is silent as to the impact of obesity on RFC. The state agency physicians who evaluated plaintiff's claim, and specifically considered his obesity reached the same conclusion as the ALJ that plaintiff could perform light work. A.R., at 479, 500-501. Indeed, the state agency doctors concluded that plaintiff could walk six hours in an eight hour day, a conclusion that was clearly made in light of an "other alleged impairment" obesity. A.R., at 500-501.

In apparent recognition of the deficiency of the record, plaintiff submitted additional materials to the Appeals Council, which he now contends are both "new and material." Pl. Br., at 9. In his disability evaluation form, Dr. Bujold opined that plaintiff has had daily walking limitations of less than two hours since 1995 due to numerous impairments including morbid obesity. Close review of such form reveals that Dr. Bujold found that plaintiff could lift "0" weight, and checked the "negative" or "never" boxes so many times that he even checked the "never" box when describing the number of days the doctor expected plaintiff to be absent from work during a month, A.R., at 676, clearly an error. While Dr. Bujold states that his determinations are made based on "all of the above" possible clinical findings and tests, the medical records contained in this record indicate that Dr. Bujold's functional limitations determinations are unsupported by clinical or other findings made at any time relevant to plaintiff's insured period.

The Appeals Council is required by 20, Code of Federal Regulation, Part 404.970, to review certain decisions of an ALJ. In pertinent part, the regulation provides:

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the

date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 404.970. In <u>Wilkins v. Secretary, Dep't of Health & Human Servs.</u>, 953 F.2d 93 (4th Cir. 1991), the Court of Appeals for the Fourth Circuit held that evidence is new if it "is not duplicative or cumulative," and is material "if there is a reasonable possibility that the new evidence would have changed the outcome." <u>Id.</u>, at 96. <u>See</u> <u>also</u> <u>Borders v. Heckler</u>, 777 F.2d 954, 955 (4th Cir. 1985). While it appears that such evidence is new, it does not appear that there is a reasonable possibility that had such evidence been available to the ALJ there would have been a different outcome. Indeed, the ALJ, as well as this court, would be required to reject such evidence inasmuch as it finds no support in the administrative record or in any clinical findings or notes.

Thus, the only evidence which remains as to the impact of plaintiff's weight on his ability to walk is the testimony of plaintiff himself. The ALJ clearly did not fully credit plaintiff's subjective testimony, and plaintiff has failed to argue that the ALJ erred in his credibility determination. In <u>Hatcher v. Secretary</u>, 898 F.2d 21, 23 (4th Cir. 1989), the Court of Appeals for the Fourth Circuit held that

it is well settled that: "the ALJ is required to make credibility determinations--and therefore sometimes make negative

determinations-- about allegations of pain or other nonexertional disabilities. . . . But such decisions should refer specifically to the evidence informing the ALJ's conclusion. This duty of explanation is always an important aspect of the administrative charge, . . . and it is especially crucial in evaluating pain, in part because the judgment is often a difficult one, and in part because the ALJ is somewhat constricted in choosing a decisional process."

Id., (quoting Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985) (citations omitted)).

Plaintiff has failed to present any credible evidence that contradicts the ALJ's RFC determination. As the burden of establishing his RFC is on plaintiff, and he has failed to sustain his burden, and it further appearing that the ALJ's determination is supported by substantial evidence of record, the court finds no merit to this assignment of error.

### 4.     Third Assignment of Error: *Failure to Employ a VE*

Plaintiff next contends that the Administrative Law Judge committed reversible error by not obtaining the testimony of a qualified vocational expert to insure that the agency met its burden of showing specific jobs that the plaintiff could do once the plaintiff established that he could not perform his past relevant work.

The purpose of bringing in a VE is to assist the ALJ in determining whether there is work available in the national economy which a particular plaintiff can perform. In order for a vocational expert's opinion to be relevant or helpful, it must

be based upon a consideration of all other evidence in the record, <u>Chester v.</u>
<u>Mathews</u>, 403 F. Supp. 110 (D.Md. 1975), and it must be in response to proper
hypothetical questions which fairly set out all of claimant's impairments. <u>Stephens</u>
<u>v. Secretary of Health, Education and Welfare</u>, 603 F.2d 36 (8th Cir. 1979).

The employment of a VE is not, however, necessary where the Medical-
Vocational Guidelines provide a result. In <u>Heckler v. Campbell</u>, 461 U.S. 458, 470
(1983), the United States Supreme Court upheld the Commissioner's promulgation
of the Medical-Vocational Guidelines for use at the fifth step of the sequential
evaluation and determined that, in appropriate cases, the Commissioner need not
introduce evidence of specific available jobs through a VE. The Court of Appeals for
the Fourth Circuit has subsequently held that the Medical-Vocational Guidelines may
be used to direct a finding of either "disabled" or "not disabled" in cases involving
exertional limitations. <u>Walker v. Bowen</u>, 889 F.2d 47, 49 (4th Cir. 1989). The
Fourth Circuit has also held that the mere presence of nonexertional limitations does
not, *per se*, preclude application of the Medical-Vocational Guidelines as
nonexertional limitations rise to the level of nonexertional impairments and preclude
the use of the guidelines only when the limitations are significant enough to prevent
a wide range of gainful employment at the designated level. <u>Id.</u> Pain can be either
exertional, nonexertional, or a combination thereof. <u>Id.</u>; <u>see</u> <u>also</u> <u>Gory v. Schweiker</u>,

712 F.2d 929, 931 (4th Cir. 1983) (the disability claimant's complaints of pain and leg swelling were only exertional limitations). The presence of pain does not necessarily preclude utilization of the Medical-Vocational Guidelines to direct a finding of not disabled.

In the present case, the ALJ evaluated the evidence, and decided that plaintiff could not return to his past relevant work. The ALJ then found that plaintiff was fifty-one years old as of his alleged onset date, he had a high school or equivalent education, and transferability of skills was not an issue. The ALJ also determined that plaintiff had the residual functional capacity to perform light work. The ALJ concluded that plaintiff was not disabled through the application of Medical-Vocational Rule 202.14.

Plaintiff argues herein that once he demonstrated that he could not return to his past relevant work, the Commissioner had to "show specific alternative work" that he could perform, and that burden can generally only be satisfied through vocational expert testimony. This is not correct. Where plaintiff's age, education level, RFC and transferrable skills correspond precisely to a rule in the Medical Vocational Guidelines, then the ALJ is entitled to rely on that rule to determine the issue of whether plaintiff is disabled. Hall v. Harris, 658 F.2d 260, 265 (4th Cir. 1981). The ALJ determined that plaintiff was fifty-one years old, had a high school or equivalent

education, transferability of skills was not an issue, and that he was limited to light work. When those factors are applied to the Medical Vocational Guidelines, the conclusion is that plaintiff is not disabled. 20 C.F.R., Pt. 404, Subpt. P, App. 2, Table No. 2, Rule 202.14 (2007). The ALJ determined that plaintiff only had exertional limitations, and, as such, Medical-Vocational Rule 202.14 directs a finding that he is not disabled. The court finds no error in the Commissioner's decision.

## 5. Fourth Assignment of Error: *Failure to Make a Credibility Finding as to a Lay Witness*

Finally, the plaintiff argus that the ALJ committed error by failing to make a credibility finding or assign weight attributed to the testimony of a material witness. The court has read the testimony of plaintiff's fiancee, Ms. Adkins, who lived with plaintiff up to the time his insured status expired. Under 20 C.F.R. § 404.1513(d), a plaintiff is permitted to submit evidence from "other sources":

> In addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work. Other sources include, but are not limited to--
> (1) Medical sources not listed in paragraph (a) of this section (for example, nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists);
> (2) Educational personnel (for example, school teachers, counselors, early intervention team members, developmental center workers, and daycare center workers);
> (3) Public and private social welfare agency personnel; and

> (4) Other non-medical sources (for example, spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy).

Id. Recently, in Morgan v. Barnhart, 2005 WL 1870019 (4th Cir. 2005), the Court of Appeals for the Fourth Circuit addressed what consideration an ALJ must give to corroborative lay opinions submitted in accordance with Part 404.1513(d). There, the appellate court, while not reaching the issue (making such *dicta*), agreed that an ALJ could not simply discredit such lay evidence based on inherent familial bias; instead, the appellate court found that the ALJ, implicitly and properly, discredited such lay opinions as not consistent with the medical record and the functional capacity evaluation:

> In the order denying Morgan's claim, the ALJ found, in part because of Dr. Kirkley's opinion and the FCE, that "*the allegations* of disabling pain ⋯ [were not] credible." ®. at 16 (emphasis added).) The ALJ gave no indication that "the allegations" of disabling pain to which he was referring were only Morgan's allegations, and not also the allegations of Morgan's husband and daughter. Indeed, the most natural reading of the indefinite article "the" is that it refers to all, not just some, of the allegations of pain. We believe, therefore, that the ALJ discredited the questionnaire responses for the same reasons he rejected Morgan's own testimony; *i.e.,* Dr. Kirkley's opinion that Morgan's underlying condition did not cause her pain and the FCE indicating that Morgan maintained the functional capacity to work an 8-hour day. And as we concluded with respect to Morgan's testimony, any error the ALJ made in crediting the other evidence on which the ALJ relied - - here, her activities, her lack of hospitalizations, the absence of significant side-effects, the opinion of Dr. Holford, and inherent familial bias - - was harmless, because Dr. Kirkley's opinion and the FCE were substantial evidentiary

support for the ALJ's decision to discredit Morgan's husband's and daughter's observations.

Id., at **7.

The court can find no merit to plaintiff's argument that Ms. Adkins' testimony was ignored by the ALJ. The ALJ clearly considered Ms. Adkins' testimony as he discussed her testimony in the hearing decision. A.R., at 20. Further, when Ms. Adkins' testimony is compared with that of plaintiff, it appears that her testimony was consistent and repeated much of the information that plaintiff provided himself. Indeed, the ALJ succinctly and accurately summarized Ms. Adkins' testimony. Finally, the court cannot find any error in failing to make a specific credibility finding as to Ms. Adkins' testimony inasmuch as formal finding five clearly set forth the ALJ's determination as to plaintiff's own testimony as to his limitations, which would apply equally, as it did in Morgan, to the nearly identical testimony of Ms. Adkins.

### E. Conclusion

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, plaintiff's motion and brief, the Commissioner's responsive pleading, and plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. See Richardson v. Perales,

supra; <u>Hays v. Sullivan</u>, <u>supra</u>. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," <u>Richardson v. Perales</u>, <u>supra</u>, the undersigned will deny plaintiff's Motion for Summary Judgment, grant the Commissioner's Motion for Summary Judgment, and, therefore, affirm the decision of the Commissioner.

Signed: April 22, 2008

Dennis L. Howell
United States Magistrate Judge